UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Alisha W. Wilkes,<br><br>                      Plaintiff,<br><br>- against -<br><br>Experian Information Solutions, Inc., Trans Union, LLC., GMAC Mortgage, LLC., Western Sierra Acceptance Corp., DCFS USA, LLC., Credit Infonet, Inc., Credit One Bank N.A., FAMS/One Technologies, National Future Mortgage, Inc., America Funding, Inc., Nationstar Mortgage, LLC.,<br><br>                      Defendants. | Civil No. 1:10-cv-01160-TRJ |

**PLAINTIFF'S REPLY MEMORNADUM IN SUPPORT OF**
**HER MOTION FOR RULE 37(c)(1) SANCTIONS**

COMES NOW the Plaintiff, Alisha Wilkes, by counsel, and for her Memorandum in Support of her Motion for Rule 37(c)(1) Sanctions, she states as follows:

**OVERVIEW**

Plaintiff will not presume GMAC malevolence or dishonesty as an explanation for its gross mistakes of fact, incomplete account of events or selective and misleading citation of cases. In the heat of litigation, with multiple attorneys on each side and rigorous deadlines, such errors may be but innocent mistakes. Yet they have occurred nonetheless. Defendant's opposition is neither an accurate statement of the case history or a forthright presentation of the cases cited therein.

Defendant greatly exaggerates the "notice" it provided that one or more of its challenged witnesses would be called by it at trial. None of GMAC's employees were first voluntarily offered by Defendant in discovery – they were names that appeared in

miscellaneous and often unimportant emails or mentioned by another witness and were thereafter amongst a group of potential witnesses Plaintiff's counsel blindly tried to find for depositions.  With the exception of Ms. Fleitas, none were revealed either formally (Rule 26(a)(1) disclosures; in response to an interrogatory <u>requesting identity of intended witnesses</u>) or informally (e-mail; phone conversation).  Instead, in May, they were included within a much longer list of persons "who may have knowledge of facts in the case" in response to one of Plaintiff's Interrogatories.   Nothing else was disclosed.

GMAC is incorrect – and it knows so – in its suggestion that, as to each witness, "Plaintiff had multiple opportunities to depose [him/her] individually and failed to so."  With the exception of Amy Fleitas, GMAC permitted no such opportunity.  It refused to provide an address – even a state of residence – for Ms. Manning.  It never identified Heather Meinecke as a witness, let alone identified her as a GMAC employee or with an address or state of residence.   It never identified Chris Nolan, its attorney in the state lawsuit, as a potential witness until June 1, 2011.  In fact, GMAC had objected to discovery of any of its state court attorney communication as work product and attorney-client privileged.  And until the week discovery was to end, and a month after all written discovery had closed, Defendant had continued to refuse to provide deposition dates, arrange witnesses or provide their contact information or produce any documents requested that would have related to such persons.

GMAC either does not understand or instead deliberately oversimplifies the nature of the "harm" caused by its delayed- or non-compliance.  The mere possibility that Plaintiff could have taken a Rule 30(b)(1) deposition of a GMAC employee on June 17, 2011, or even June 6, 2011, does not remedy the strategic and evidentiary prejudice

Plaintiff suffered by GMAC's refusal to play by the rules.  Plaintiff throughout the litigation has been building a case and forcing discovery in a manner that supports that case.  In that process, Ms. Wilkes' counsel met a series of crossroads in which a decision had to be made as to how to react to and address what was, for nearly the entire case before May, total non-compliance by GMAC.  It had not disclosed witnesses.  It had objected to 100% of Plaintiff's written discovery requests – to every interrogatory or request for production of document; and even later to Plaintiff's requests for admission.  Defendant had refused to cooperate and provide identities, addresses or information about any of its employees.  And during that process, there were hours upon hours of meet and confer efforts.  Phone calls.  E-mails and letters.  Accordingly, Plaintiff built her case around evidence that was in her own control.  Her counsel discovered GMAC employees and their addresses on public websites such as [www.linkedin.com](www.linkedin.com), [www.jigsaw.com](www.jigsaw.com), and [www.facebook.com](www.facebook.com).  And after doing all of this, Plaintiff had still never heard of or understood the involvement of most of the challenged witnesses.

       Further, while GMAC's permitting of the depositions would have been a start, forcing Plaintiff to take such depositions the week of the Final Pre-trial Conference, with no ability to conduct follow-up discovery and in the face of significant deadlines and litigation demands is certainly harm and prejudice.  Plaintiff is clearly worse off for not having known of GMAC's intent to call these witnesses at trial.  The questions should be whether or not there are alternatives to overcome that prejudice; or whether or not that harm should be balanced against GMAC's own loss if such evidence is excluded.  But the Defendant cannot credibly claim that its delayed or expired disclosures are mere technicalities to be handled as "no harm, no foul."

Finally, and importantly, GMAC does not attempt a single explanation or proffer to provide the "substantial justification" Rule 37(C)(1) would require. All of the challenged witnesses and exhibits were in GMAC's control from the day this case was filed. To the extent that they are to be as "critical" to GMAC's defense as it now claims, the witness and exhibit identities should have been known.

## ARGUMENT

A.     **GMAC's Explanation of Rule 37(c)(1) is Incorrect**

There is not ambiguity in either the text of Rule 37(c)(1) or the interpretations of the Rule offered in this District and Circuit. To assert otherwise, GMAC had to either combine snippets of cases in which the opining court offered a general overview to the Rule before thereafter finding it and exclusion appropriate or offer rulings that substituted a trial continuance or greater discovery period for the penalty of exclusion. For example, GMAC suggests:

> The Fourth Circuit has emphasized that "[g]enerally, preclusion is considered a drastic remedy, and is not imposed unless the party's conduct is in bad faith or callous disregard of the discovery rules." *Tritchler v. Consolidation Coal Co.*, No. 95-2679, 1996 U.S. App. LEXIS 15600 *5 (4th Cir. June 28, 1996) (unpublished); *see also Lathon v. Wal-mart Stores East, LP*, No. 3:09-cv-57, 2009 U.S. Dist. LEXIS 54682 *6, 12 (E.D. Va. June 24, 2009) (denying defendant's motion to exclude evidence pursuant to Rule 37(c) despite the fact that the plaintiff failed to timely respond to any discovery requests and served deposition notices less than two months before trial, finding excluding evidence is "the most severe sanction" and is "drastic").

Def. Mem., p. 11-12. In fact, the Fourth Circuit then found, "Here, the district court shaped its remedy to fit the violation it perceived. The court excluded a document that was not but should have been produced, and it permitted testimony from witnesses whose knowledge of the facts *was* properly disclosed." *Tritchler v. Consolidation Coal Co.*, 91

F.3d 134 (4th Cir. 1996).  Similarly, in rejecting the exclusion sanction in *Lathon v. Wal-Mart Stores E., LP,* Judge Lauck was able to offer an alternative remedy clearly not possible in this case – she moved the trial date.  CIV.A. 3:09CV57, 2009 WL 1810006 (E.D. Va. June 24, 2009) ("These motions seek the most severe sanction for such failure: exclusion of evidence. The Court declines to impose such high-level sanctions at this stage. Instead, the Court will extend discovery and continue the trial date.").  And while Defendant does quote some of the Fourth Circuit's text in *C&C Diesel Service, Inc. v. B & P Towing, Inc.* ("The Fourth Circuit has recognized that appellate courts have reversed district court orders excluding evidence where "the evidence was essential, or the exclusion resulted in fundamental prejudice."), it omits the contrary context for its quote:

> Appellate courts have routinely upheld, as within the discretion of a district court, the exclusion of witnesses and evidentiary exhibits based on a party's failure to comply with discovery deadlines. *See, e.g., Adalman v. Baker, Watts & Co.,* 807 F.2d 359, 369 (4th Cir.1986); *Lirette v. Popich Bros. Water Transp. Inc.,* 660 F.2d 142, 145 (5th Cir.1981). Only in cases when the evidence was essential, or the exclusion resulted in fundamental prejudice, have courts reversed such orders. *See, e.g., Murphy v. Magnolia Elec. Power Ass'n,* 639 F.2d 232, 235 (5th Cir.1981). Here, the expert testimony was not relevant to the issue of liability. It was somewhat relevant to the issue of punitive damages because the experts were prepared to testify that the amount of B & P's statement was reasonable. We cannot say, however, that exclusion of this testimony constituted fundamental prejudice.

*C&C Diesel Service, Inc. v. B & P Towing, Inc.*, 911 F.2d 721 *7 (4th Cir. 1990).

Most remarkably, GMAC argues that in *Southern States,* the Fourth Circuit recognized that "bad faith" could be "relevant to the fifth factor of [the] test - the non-disclosing party's explanation for its failure to disclose evidence."  Def. Mem, p. 14. While this language is in the decision, the Fourth Circuit clearly was not suggesting as

Defendant falsely claims that bad faith or motive is required for Rule 37(c)(1) exclusion.

In fact, the Court of Appeals stated:

> Thus, while the exclusion analysis under Rule 37(c)(1) is limited by the specific language of that provision, Rule 37(b) allows district courts to consider a broader range of factors, including bad faith, in determining which sanction(s) to impose.
> For this reason, the four-factor test recited in *Anderson* and *Belk,* which includes bad faith, does not control the determination of whether to exclude evidence under Rule 37(c)(1). Indeed, the most recent published decision of this court applying Rule 37(c)(1) did not consider whether the nondisclosing party acted in bad faith, but instead focused solely on whether the failure to disclose was substantially justified or harmless. *See Nelson-Salabes, Inc.,* 284 F.3d at 513 n. 10 (affirming exclusion of damages testimony when party failed to properly supplement discovery).

*S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).[1]  For all of the opposition argument attempted by GMAC, the law as regards Rule 37(c)(1) in this Circuit and in this District is as stated in the most oft-cited Eastern District of Virginia case, *Rambus, Inc. v. Infineon Tech. AG,* 145 F. Supp.2d 721 (E.D. Va. 2001)(Payne, J.).  As Judge Payne explained and as Plaintiff earlier cited:

> [T]he plain language of the rule contains no requirement for bad faith or callous disregard of the discovery rules.  In fact, the rule is rather harsh in that it automatically imposes the preclusion sanction unless the non-complying party can show that there is substantial justification for the failure to make the disclosure, and that the failure was harmless.

145 F. Supp.2d at 727.

As previously detailed, Rule 37(c)(1) states in relevant part that, "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial[.]" Fed. R. Civ. P.

---

[1] The language cited by GMAC also would not apply to any of the factors at issue in this case – Defendant does not assert a justification for its failure to disclose.

37(c)(1).  GMAC offers several defenses to this motion – that it did make its Rule 26(a)(1) disclosures and that in any event, an non-compliance was harmless.  Plaintiff addresses each in turn.  But there is no argument that GMAC's refusal or failure to identify any trial witnesses in its Rule 26(a)(1) disclosures, or to disclose any of the challenged witnesses besides Ms Fleitas in any later supplementation was justified.  Rather, Defendant does not offer any explanation for its noncompliance.  In any event, particularly in the face of the communication between the parties' counsel regarding the importance of such disclosures, GMAC could never meet this threshold.

### B.    Only Amy Fleitas is a 'Close Call'

Plaintiff has moved to exclude GMAC's use at trial of four witnesses (plus the untimely opinions of Oscar Marquis).  Of these four witnesses, only one is a close call.  GMAC did identify Amy Flietas as a potential defense witness in its Supplemental Rule 26(a)(1) disclosures on April 19, 2011.  This is not so for any of the other witnesses at issue.

Nevertheless, by that date – Plaintiff had already served her expert witness disclosures and had a very limited window to conduct additional written discovery.  This prejudice – the delay of disclosure until April 19, 2011 – then became incurable upon Defendant's refusal to reveal the witness' address or state of residence or to provide an available deposition date until the week discovery closed.  The failure to disclose this witness, an employee who GMAC now claims is critical for its defense, when it made its initial disclosures or in response to Plaintiff's request for timely and earlier supplementation, certainly imposed some degree of prejudice.  Given the lack of a profer

for GMAC's substantial justification, this is enough to require automatic exclusion under Rule 37(c)(1).

### C. Manning, Meinecke and Nolan were NEVER disclosed

In contrast to Ms. Fleitas, GMAC never disclosed that it would use Ms. Manning or Ms. Meinecke as trial witnesses before making its Rule 26(a)(3) disclosures on June 16, 2011. While Plaintiff did "learn of Ms. Manning on April 25, 2011", this was only because the name incidentally came up in other discovery. Just as many other names came up. GMAC never represented in any manner at any time that it was intending to use her as a witness. It did not disclose even where she worked or her address. And while GMAC is correct that Plaintiff "reiterated her intention to depose Ms. Manning", GMAC never agreed. It never provided Ms. Manning's information or address. Its claim that Plaintiff "cancelled" her deposition is patently false. GMAC never permitted the scheduling of such a deposition. In fact, it adamantly opposed it – and without Manning's address, the deposition could not occur. *See e.g.* Exhibit "A" (May 2011 e-mail chain between counsel). Regardless, whether or not Plaintiff in May 2011 discovered Ms. Manning's existence as a GMAC employee, there was still no indication that she could offer any evidence to assist GMAC in its defense (as opposed to helping prove the Plaintiff's case). Finally, as with the other late disclosures, a deposition in June or even May would not have permitted use of same by Plaintiff's expert or additional discovery to challenge the substance of the new GMAC witness.

Ms. Meinecke was never disclosed as a potential GMAC witness. She was listed as one of many "persons with knowledge" in a fifth supplemental response to such an Interrogatory. But Defendant did not even identify her as a GMAC employee, let alone

provide her address or state of residence, or anything else about her. Essentially, GMAC just listed about a dozen names of persons who potentially could have knowledge about the facts in the case. Ms. Meinecke was one of these. Only her first and last name.

Mr. Nolan also was never identified as a potential GMAC witness. To the contrary, Defendant identified every communication with Mr. Nolan, one of its several state court attorneys, as privileged and undiscoverable. His name was not brought into the case until the week before the Final Pre-trial conference. And while Plaintiff attempted to serve a last minute – post-discovery deposition notice and document subpoena, GMAC never so agreed. Further, if Ms. Nolan were somehow introduced into the case, Plaintiff would need to depose all of GMAC's attorneys, review documents from the third party firms and conduct additional discovery as needed. Plaintiff may also have needed the right to disclose a second expert witness.

### D. Oscar Marquis cannot offer a "Rebuttal Report"

The core problem with GMAC's argument as it relates to Mr. Marquis' purported "Rebuttal" report is that it is NOT a rebuttal report. The sequence of expert disclosures in the case, as in most, is: Plaintiff makes her expert disclosure; defendant then serves a responsive report at a later date; and then plaintiff can serve a rebuttal report to reply to the defendant's disclosure. In this case, it would have been Plaintiff's right to serve such a rebuttal to reply to Mr. Marquis' timely expert witness disclosure and report. Mr. Marquis had already in his report fully responded to Plaintiff's expert.

Instead, the "Rebuttal" report was a poorly disguised attempt to supplement the earlier report. Defendant could have moved for leave to supplement the report. It could have met and conferred with Plaintiff's counsel even to do so. But it did not. Rather,

with one week left in written discovery, only several weekdays before the long scheduled deposition of Marquis and while Plaintiff's own expert was on the clock being deposed, GMAC emailed the revised Marquis report. The matters contained in new report – the facts and opinions – are entirely different than those in the original report.

GMAC responds that – as Plaintiff could have deposed Mr. Marquis on the new report there is no harm. This is untrue. Had Marquis disclosed such asserted facts and opinions in his actual report, Plaintiff would have conducted additional discovery. Her counsel would have been able to prepare fully for the deposition. And – importantly – Plaintiff's own expert could have disclosed an actual rebuttal report. Frankly, the original Marquis report was unremarkable. It was a regurgitation of the witness' previous reports on behalf of other industry defendants in other cases. And as his deposition objectively revealed, Mr. Marquis did not really know much regarding the liability opinions he had offered. Little needed to be done to prepare to challenge his use under Fed. R. Evid. 702.

Defendant also points out that Plaintiff then did attempt to conduct discovery of Mr. Marquis by subpoena to obtain information useful in opposing the new report – primarily communications with GMAC's counsel in which the witness' factual assumptions were obtained. Remarkably, GMAC is presently opposing that "rebuttal report" discovery attempt because it is untimely. (Served on June 8, 2011, but requiring production after the June 10, 2011 discovery cutoff). Def, Mem., note 7.[2]

**CONCLUSION**

---

[2] Plaintiff does not herein address GMAC's "tit for tat" criticism of her disclosure of third parties Matthew Kingery and Brian Garcia as trial witnesses. Defendant can challenge such disclosure and Plaintiff where then respond. However, as with much of its argument, Defendant withholds a number of facts. These were witnesses not intended by Plaintiff, but deposed by Defendant. Plaintiff has merely disclosed that it may use the testimony that GMAC gathered from them.

To the extent that Plaintiff could ask for sanctions greater than Rule 37(c)(1) exclusion, she does not now do so.

        Respectfully Submitted,

        ALISHA WILKES,


        _____/s/_____
        Leonard A. Bennett, Esq.
        VSB #37523
        Attorney for Plaintiff
        CONSUMER LITIGATION ASSOCIATES, P.C.
        12515 Warwick Boulevard, Suite 100
        Newport News, Virginia 23606
        (757) 930-3660 - Telephone
        (757) 930-3662 – Facsimile
        lenbennett@cox.net


**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of June, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
757-687-7765
Fax: 757-687-1504
Email: john.lynch@troutmansanders.com




Elizabeth Spain Flowers
Troutman Sanders LLP
222 Central Park Ave

Suite 2000
Virginia Beach, VA 23462
(757) 687-7500
Fax: (757) 687-1546
Email: liz.flowers@troutmansanders.com

Ethan G. Ostroff
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
(757) 687-7541
Fax: (757) 687-1541
Email: ethan.ostroff@troutmansanders.com

Brian Nelson Casey
Taylor & Walker PC
555 Main St
PO Box 3490
Norfolk, VA 23514-3490
(757) 625-7300
Email: bcasey@taylorwalkerlaw.com

__________/s/________________

Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net