```
1                  UNITED STATES DISTRICT COURT
2                  EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION
3    _____

4    ALISHA W. WILKES,              )
                                    )
5            Plaintiff,             )  Docket No. 1:10-cv-1160
                                    )  Alexandria, Virginia
6            v.                     )
                                    )  July 1, 2011
7    EXPERIAN INFORMATION           )  10:00 a.m.
     SOLUTIONS, INC., et al.,       )
8                                   )
                                    )
9    Defendants.                    )
     _____

10

11

12                      TRANSCRIPT OF HEARING

13           BEFORE THE HONORABLE T. RAWLES JONES, JR.

14               UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21   APPEARANCES:

22   For the Plaintiff:     Leonard A. Bennett, Esq.
                            John C. Bazaz, Esq.
23                          Matthew J. Erausquin, Esq.

24   For the Defendants:    John C. Lynch, Esq.
                              (GMAC Mortgage, LLC)
25
```

1              P R O C E E D I N G S

2         THE CLERK:  *Alisha Wilkes v. GMAC Mortgage, LLC, et al.*

3    Case No. 10-cv-1160.

4         MR. BENNETT:  Your Honor, I am Leonard Bennett.

5         THE COURT:  Thank you.

6         MR. LYNCH:  John Lynch, Judge.

7         THE COURT:  Thank you.

8         MR. BENNETT:  Your Honor, may I also introduce John

9    Bazaz, cocounsel in Fairfax; my partner, Matthew Erausquin, who

10   is in Alexandria.

11        THE COURT:  Good morning.  Thank you.

12        We're here on several motions, motions to strike.  The

13   other motions are overruled.  Let's get down to what, if

14   anything, needs to be done to resolve your underlying disputes.

15        Mr. Bennett.

16        MR. BENNETT:  Your Honor, to (inaudible) attempt as an

17   advocate to be objective, the -- we have tried to categorize in

18   our -- and you may not have even seen our reply yesterday.

19        THE COURT:  I've read the reply, along with the other

20   papers.

21        MR. BENNETT:  Yes, sir.  There is one witness that

22   satisfies -- that was disclosed as a potential witness, it was

23   revealed to us as a potential witness.

24        THE COURT:  Why is this dispute coming to the Court for

25   the first time now?  It was obvious to me during the telephone

1    hearing several weeks ago that counsel had been at loggerheads

2    in this case basically during the entire discovery period, but

3    problems that could have been brought to the Court's attention,

4    this Court in this division sitting every Friday to resolve just

5    such problems and hearing matters by telephone when and as

6    necessary, any or all of these problems, disputes could have

7    been dealt with at the time.

8          And to come in at the end, when most of them appear to

9    have been resolved, perhaps not to your satisfaction but to have

10   been more or less resolved, to come in and ask for exclusionary

11   sanctions after the fact is unusual, at least in this division.

12         MR. BENNETT:  Well, Judge, I have, for all the practice

13   I have in this district, I'm a novice in this division.  I

14   would --

15         THE COURT:  But you have other lawyers that you're

16   associated with who --

17         MR. BENNETT:  Judge, I'm not claiming ignorance as a

18   defense.

19         THE COURT:  Okay.

20         MR. BENNETT:  The answer to the question, Judge, is

21   that we could not have reasonably, but for the single witness,

22   Ms. Fleitas, we could not reasonably have brought anything

23   germane or ripe to Your Honor at all.

24         THE COURT:  I disagree.

25         MR. BENNETT:  Well, Judge, this is why.  The first time

1    that we -- there's two different issues.  First of all, the

2    defense to the witnesses is that these are human beings on this

3    planet whose identity we could have discerned; that is, we could

4    have discerned that they existed.  They were never represented

5    as individuals at all.

6         Before the hearing that Your Honor had with us, for

7    example, June, I believe, 1st, approximately, they had never

8    been represented as witnesses.  We were -- we received a bunch

9    of documents.  We had --

10         THE COURT:  I understand.

11         MR. BENNETT:  Judge --

12         THE COURT:  Hang on just a minute.  I'm not trying to

13    cut you off.  I want to focus on the problem that's before the

14    Court right now.  I understand that you think that the lawyers

15    at Troutman have been jerking your chain for the entire period

16    of this litigation, and they may have been.  I don't know, and I

17    don't know whether I need to decide that today.

18         It appears to me from the papers though, and this is

19    what I want to focus on -- I'm going to be quiet or try to and

20    let you make your case -- it appears to me from the papers that

21    perhaps with the exception of the so-called rebuttal expert

22    report, you've had an opportunity, in fact, to depose everybody

23    you need to depose.  You have the documents that are out there

24    to be had.

25         It is difficult for me to see from the papers what you

1  need to do to be ready for trial that you haven't in fact been

2  able to do --

3        MR. BENNETT:  Yes, sir.

4        THE COURT:  -- as things actually played out.  And I'm

5  going to be talking to Mr. Lynch about the rebuttal expert

6  report in a few minutes.  I don't really need to hear you on

7  that.

8        But as to how your client has in fact been prejudiced

9  and what needs to have happened that didn't happen for you to be

10 ready for trial, that's where I want to focus.

11       MR. BENNETT:  Yes, sir.

12       THE COURT:  Okay.

13       MR. BENNETT:  First, what I think to be

14 uncontroversial -- I mean, they are controversial because we

15 have a hearing, but they should not be controversial issues --

16 are those witnesses that were disclosed in June of 2011; that

17 is, those witnesses where we had no opportunity to serve a

18 subpoena, to get documents, we had no opportunity to take other

19 action.

20       THE COURT:  Why didn't you --

21       MR. BENNETT:  Judge, I don't --

22       THE COURT:  Novice may be the answer, but --

23       MR. BENNETT:  It's not novice, Judge.

24       THE COURT:  -- but why didn't you move for relief from

25 the scheduling order, why didn't you ask for an extension of

1    discovery, why didn't you ask for a protective order at the

2    time, why didn't you ask for some relief that would have solved

3    whatever problem you had at the time?

4        MR. BENNETT:  Judge, because it was only on the 16th of

5    June that these witnesses were identified as individuals this

6    party said they were going to call at trial.  We filed our

7    motion on the 17th of June.  When I got back from our

8    mini-version of tunnel traffic from taking depositions in

9    Virginia Beach, I filed the motion.  You can tell I filed it

10   because it needed a notice of correction from the clerk's

11   office, but I filed the motion on the 17th, the day after we

12   received these disclosures.

13       They served the disclosures on us, not improperly,

14   perfectly lawfully, electronically so that we didn't even have

15   them while we were here with Judge Hilton.  It was when I got

16   back to Newport News, Virginia, was the first time that we saw

17   that they were going to call some of these individuals.

18       Now, Ms. Fleitas isn't that way, but the others are,

19   Judge.

20       THE COURT:  Help me keep it sorted out.  Were they

21   individuals whose -- who had been identified before?

22       MR. BENNETT:  They were -- they had never been

23   identified as potential defense exhibits.  They had been

24   identified as names amongst many names, many names, and their

25   addresses weren't provided, no details about them were provided.

1  They had not been identified, and they weren't identified during

2  the period as defense witnesses.

3       Your Honor's question, what could we have done?  All

4  right.  We received disclosures, 26(a)(1)s, and you have --

5  we've attached part of the meet and confer letters.  They

6  actually -- their first exhibit in their motion, in their

7  response brief to our 37(c)(1) motion, they attach others.  We

8  immediately contacted counsel when they served their initial

9  disclosures and said you've not identified anybody at all.

10  We're okay if you want to supplement that, but if you don't, if

11  you don't supplement it, and we gave them another couple weeks,

12  then we intend to oppose if, at the end of this proceeding --

13  and that's when it happened -- you then say we're going to call

14  these people.

15       And what happened, Judge, from the defendant's

16  standpoint is that they got going late in the case.  GMAC -- and

17  I've never had to represent a large, slow-moving behemoth or

18  whatever explanation there may be -- they didn't get going until

19  late in the case to figure out who they might have that they

20  would want.  We served discovery almost immediately.  We acted

21  promptly.  We have countless deposition notices.  And, Judge,

22  the defendant's position is we knew of these people.  Well,

23  Judge, we knew of a lot of people.

24       THE COURT:  I take that point.

25       MR. BENNETT:  We are -- but if you take some examples

1   as well.  There are decisions that we're entitled to make.

2   We're big boys, Judge.  We've litigated plenty.  We have a

3   choice.  When we receive a privilege log that lists every

4   communication with, for example, Mr. Nolan, the witness they

5   only disclosed in June, and that's one of their state attorneys,

6   we could oppose that privilege log.  But if that witness is not

7   going to -- there's no potential for that witness to bite us

8   because they're not disclosing him as a witness.  He's just a

9   human being, much like the paralegal in Mr. Nolan's office or

10  his partners or anyone else.  He can't bite us.  We don't need

11  to move to compel because the evidence isn't going to help us or

12  hurt us.  We aren't going to get it, and we don't have to

13  proceed and come to Your Honor every time.

14       If we ask an interrogatory and the defendant doesn't

15  answer the interrogatory, we have to make a decision, does that

16  interrogatory matter or am I just going to come here and say,

17  Your Honor, you know, that technically they didn't do A, B, or

18  C?  We've prosecuted motions to compel under other provisions of

19  37, but in this instance, Judge, we have our case.

20       We don't need the defendant's evidence more than we

21  were able to force.  We don't need the defendant's evidence to

22  prove our case, but what we don't -- what we cannot fairly be

23  prejudiced by is to have the defendant not tell us what it

24  intends to do and then only in the final pretrial conference

25  disclose these individuals or after, Judge, we've had our expert

1    witness report, we've had our discovery close.

2         THE COURT:  In what context did you ask defense counsel

3    what they intended to do?  You've described a conversation that

4    you had about the Rule 26(a)(1) disclosures.  Was there an

5    interrogatory that required defendants to identify in more

6    detail than the 26(a)(1) disclosures --

7         MR. BENNETT:  Judge --

8         THE COURT:  -- who had knowledge of the case?

9         MR. BENNETT:  Sure.  The interrogatory, Your Honor,

10   that asked for witness identities is interrogatory 10.  An

11   example of it is at docket 107-13, and I have copies if Your

12   Honor would just -- it would streamline it for me to give it to

13   you.  But it was just a standard identify anyone with factual

14   knowledge and give us certain information about those witnesses,

15   and they listed over the course of their supplementation 12 GMAC

16   employees, the majority of which they have not -- now they're

17   not using as witnesses.

18        Those are individuals who they say may have some

19   factual knowledge.  But we don't ask, I don't ask in an

20   interrogatory for who do you intend to disclose or use at trial

21   because of work product concerns.  This is to say, and as

22   defendant says, that the plaintiff had heard of these names, had

23   heard of the first and last names at issue and therefore should

24   have done more about it.  Well, there are two purposes for

25   discovery.  The first is to build our case and the second is to

1   know what theirs is.

2          With respect to building ours, that's what this

3   interrogatory was geared for, that is what our discovery was

4   geared for.  Since 1993, since before that, and there was

5   controversy, three Supreme Court court justices opposed the

6   expansion of voluntarily -- or involuntarily disclosures under

7   26(a)(1), but both parties have had that obligation.  If I were

8   to appear before Your Honor as plaintiff and say, Judge, at the

9   final pretrial conference, I have a damages expert I want to

10  use, this wouldn't be controversial.  I couldn't use that

11  person.  I wouldn't have the gumption to do that if I had not

12  revealed to the defendant this is somebody we intend to use.

13         Now, mind you, Your Honor, and we've said this -- there

14  are plenty of witnesses.  I mean, in fact, none of the

15  witnesses, zero were disclosed by defendant under 26(a)(1).  And

16  they have a long list, 15 trial witnesses they've disclosed, but

17  many of these I couldn't represent to Your Honor that we would

18  be prejudiced or they were discovered by the defendant during

19  the discovery period.

20         THE COURT:  Is there anybody you need to depose that

21  you haven't had the chance to depose?

22         MR. BENNETT:  The -- if I -- always answer the judge's

23  question.  I would need to depose each of the individuals

24  individually.  I do not have the moral standing of quite the

25  prejudice with Ms. Fleitas as I otherwise did because they

1   disclosed her in the middle of April.  Her name -- it was

2   apparent from documents that she was very active in the early

3   part of the history of the case.  The other individuals we were

4   blind on.  The -- they were not disclosed to us.  So that isn't

5   simply a matter of some harm, but it's, we think, significant

6   prejudice.

7          The hesitation, to answer your question though, Judge,

8   now that I've answered it, is taking the depositions wouldn't

9   cure the problem.  In particular, with respect to the attorney

10  that they disclose or Ms. Manning, we would need to be able to

11  have to do additional discovery.

12         For example, if now, June 16th, they intend -- or in

13  June they disclose to us, as they did, that now they intend to

14  use a lawyer to try to -- and if you recall the fact pattern is

15  and the Oscar Marquis report says, in part, one of my opinions

16  as an expert is I used to work for a large corporation and

17  papers get lost.

18         THE COURT:  Well, they say in their opposition that the

19  only thing they're going to ask the lawyer is factual questions

20  about what did and didn't happen during the state court

21  proceedings.

22         MR. BENNETT:  But to the -- first, Judge, that can't be

23  credible because you have a 30-some-page order that

24  collaterally estops either party from claiming anything other

25  than what the state court said.  Mr. Nolan would be offered to

1    say I didn't provide enough or I didn't give my documents

2    regularly or I didn't share these and the like which would

3    implicate communications that the defendant has said are

4    privileged, which means we would then, had they disclosed

5    Mr. Nolan in March when they were required to make disclosures

6    and then followed it with the extensive privilege -- I mean, the

7    privilege log includes communications even before the state

8    court was ever contemplated -- no harm to us because the

9    evidence can't hurt us without some attorney to testify, but now

10   we have to litigate these privilege issues.

11        We have to come before Your Honor in a month, in a week

12   or so before trial, or come before Judge Hilton and we have to

13   battle privilege for documents that are otherwise meaningless

14   without Mr. Nolan and the other attorneys, and then we need to

15   depose other attorneys besides Mr. Nolan.

16        Mr. Nolan represented the defendant when it made a

17   claim against the title company, and it was actually paid by the

18   company on this subject debt before it then continued to verify

19   it to my client.  We would need to depose the title company and

20   others that -- and it opens up an avenue of discovery that we

21   were confident about that was closed off because the defendant

22   hadn't gone that way as a defense.  And for it to go that way as

23   a defense at the final pretrial conference, it is prejudicial.

24        I have -- I don't ask for continuances and I wouldn't

25   in this case.  We have a trial date.  This is my first trial in

1  front of Judge Hilton.  I'm not -- I don't want to continue it.

2  I'm going to do the best job I can for my client, and I want to

3  appear in this court like I have in front of Judge Payne or

4  Judge Spencer or others and do a good job.  We can't cure this

5  prejudice without moving the trial and we should not have to

6  move the trial.  This is a defendant and this is a defense team

7  that have not -- I mean, this is not a unique outlier or at

8  least it's not in this state.  We already had Judge Moon have to

9  consider the same type of issues, and in that instance, striking

10  their defense.  We're not asking for that in this instance.

11         We're simply saying of the 15 witnesses, they should

12  only be able to use the ones that they disclosed within a

13  reasonable time of the obligation to do so, certainly no

14  witnesses they disclosed after our ability to do written

15  discovery, to do third-party subpoenas.  To depose witnesses

16  that we would use in opposition to those has closed, both

17  practically and procedurally.

18         I will respect whatever Your Honor decides and we'll

19  move forward.  I'm not intending to object to any R and R, but

20  that's -- if there was one, but I just -- this is not something

21  I take lightly.  We have not flooded Your Honor with cries for

22  mercy.

23         THE COURT:  That is certainly true.  Help me

24  understand.  Before you proceed to battlefield, help me

25  understand better than I do what it is you think you need to do

1   with respect to --

2           What's the attorney's name again?

3           MR. BENNETT:  Mr. Nolan, Judge.

4           THE COURT:  Help me understand better than I do what he

5   does to your case and what you think you need to do in order to

6   get ready?

7           MR. BENNETT:  Judge, the only -- well, first of all,

8   you know, in the interrogatory we asked for other information

9   about what witnesses know, and the defendant didn't list

10  Mr. Nolan so there wasn't a basis to say, well, tell us more

11  about him.

12          My assumption is that they would use him to attempt to

13  separate the GMAC corporate knowledge that this was not my

14  client's debt from the knowledge at the front line in the

15  courtroom in the state action.  That is, that they would say

16  it's conceivable that this information had not been passed to

17  the inside folks at GMAC.  Mr. Nolan was working under an

18  indemnity demand and wasn't their normal attorney.  As well,

19  they were contemplating whether they're going to appeal and

20  that's why they believe this debt was still owed, all of those

21  issues.

22          And I represent those to Your Honor out of conjecture.

23  I'm not hiding some e-mails that exist and mischaracterizing

24  them.  If those issues exist, then we need to -- that's a

25  totally new defense.  I mean, that witness presents something

1    that none of their other witnesses could have presented.  Their

2    other witnesses would be, did they take the care inside the GMAC

3    corporate headquarters to do what they're supposed to do.

4         Mr. Nolan opens an entirely new line of defense, and it

5    requires us to litigate this with third-party discovery that we

6    just can't do at this late date, not when -- I mean, even

7    Mr. Nolan, we served a subpoena to try to get his documents the

8    moment that they disclosed, and Mr. Lynch responded that

9    Mr. Nolan was going to oppose producing any documents or any

10   other information in his e-mail to us.

11        THE COURT:  I took note of that.

12        All right.  Let me talk to Mr. Lynch.

13        MR. LYNCH:  Judge, I'd like to just go through the

14   witnesses individually.  I can address Mr. Nolan and, I think,

15   clear Mr. Nolan up.

16        THE COURT:  Well, let's start with Mr. Nolan.

17        MR. LYNCH:  Judge, all we're trying to get from

18   Mr. Nolan, and I don't know if it was before the Court or not,

19   when we identified him and to avoid the deposition, we sent

20   opposing counsel a list of like five facts saying if you'd

21   stipulate to these five facts, a deposition wouldn't even be

22   necessary.

23        All we want from Mr. Nolan is to be able to testify

24   that during the trial and the month after the trial that no one

25   from either the plaintiff or the plaintiff's counsel called him

1   and said tell GMAC to delete the trade line.  We're not calling

2   Mr. Nolan, and I'll stipulate and say this completely on the

3   record, for him to testify about any of his communications with

4   anybody at GMAC at all.

5          Our defense with Mr. Nolan is, instead of writing these

6   letters to the consumer reporting agencies when the case was

7   still under appeal, if they genuinely wanted the trade line to

8   be deleted, they would have called Mr. Nolan.  They had been

9   dealing with him for a year and a half in the state court trial.

10  All they had to do was pick up the phone, call him and say

11  please delete -- have GMAC delete the trade line, you won the

12  state court case.

13         THE COURT:  Okay.  So you want him to establish -- you

14  want to call him to establish five facts you said.  One is the

15  plaintiff didn't --

16         MR. LYNCH:  Well, I mean, a couple of the other ones,

17  Judge, were like he was the -- I mean, some of them were basic

18  stipulations, but I could -- I don't know if I have it right in

19  front of me, but it was five to six at the most, and they said

20  no.  And then I -- we identified him.  We made him available.

21  The court said anybody else that needs to be deposed the next

22  week, and we secured his availability for the afternoon after we

23  had the final pretrial with Judge Hilton in this court, and they

24  called and wrote me and said you better arrange his deposition,

25  and we did, and then they canceled it.

```
 1              With respect to the subpoena, Judge, we had an
 2    agreement early on in this case we weren't going to exchange the
 3    state court documents.  The state court case isn't relevant at
 4    all.  And what they wanted to do was we were going to have to
 5    make a huge privilege log, and I wasn't offering Mr. Nolan to
 6    say, you know, he didn't tell GMA -- we're not taking the
 7    position that GMAC didn't know they lost the state court case.
 8    They lost the case.  The state court judge issued an opinion.
 9    The promissory note was deemed void and the deed of trust was
10    deemed void.  That was done in February of 2010.
11              I'm not taking the position in this case that Mr. Nolan
12    didn't communicate that to GMAC.  That is not our case.
13              THE COURT:  Okay.
14              MR. LYNCH:  So that's our -- with Mr. Nolan.  I think
15    that they wanted -- what they don't -- the reason they withdrew
16    the deposition notice when they saw our list of stipulations,
17    they don't want that fact.  They don't want that fact and they
18    want to exclude him because they think that fact is bad for them
19    because they could have just called Mr. Nolan.  The reason they
20    didn't is they wanted to go through the consumer reporting
21    agencies and set this case up is our position.
22              With Ms. -- I want to go through just some of the other
23    witnesses, Judge.
24              THE COURT:  Well, why don't you go back to the
25    beginning of the case, and as you go through them, if that's
```

1   what you need to do, tell me why they weren't on your Rule

2   26(a)(1) disclosure list, and to the extent they were, you know,

3   why it was so hard to provide addresses and such for them.

4           MR. LYNCH:  Okay, Judge.  The first person is Amy

5   Fleitas, and she was on our Rule 26(a)(1)s as of April 19th.

6           THE COURT:  And they're not seriously complaining about

7   her.  That's the one --

8           MR. LYNCH:  I don't see how they could.

9           THE COURT:  -- that he spots you.

10          MR. LYNCH:  And he's already deposed her as a corporate

11  rep.  I said, do you want to depose her individually?  He said

12  no.  I mean --

13          THE COURT:  Okay.  All right.

14          MR. LYNCH:  Lynn Manning.  Lynn Manning, Judge, was

15  identified in discovery.  She wasn't on the Rule 26(a)(1)s.  In

16  saying he was blind sided by her, I can't imagine standing up in

17  front of this court and saying that when he issued a notice of

18  deposition for her on April 29th.  That wasn't blind sided at

19  all.  Lynn Manning, issued a notice of deposition for her for

20  June 6th --

21          THE COURT:  All right.

22          MR. LYNCH:  -- and he kept saying in subsequent

23  correspondence that we've attached that he wanted to depose her

24  and then they canceled the deposition.  And they learned about

25  her, Judge, and let me tell the Court how they learned about

1   her.  There were two ACDV operators.  These are the people that

2   respond to the consumer reporting agencies when a dispute comes

3   in.  She's the supervisor for the two people that are the ACDV

4   operators.

5          So during that deposition, that was like April 25th

6   they learned about her, they immediately issued a notice of

7   deposition.  And am I saying there wasn't any debate?  We had a

8   debate about how many employees they could depose, and the judge

9   ordered they could depose anybody the next week and they could

10  have deposed her.  They issued a notice of deposition and then

11  they canceled it because they don't need her.  Mr. Bennett has

12  told you they don't need her.  If he wanted to know what she

13  could potentially say at trial, he had the opportunity to take

14  her deposition.

15         The only other person, Judge, is this Heather Meinecke.

16  Here's what happened with Heather Meinecke, Judge.  She was

17  identified in discovery.  She was not on our 26(a)(1)s.  If the

18  Court recalls, it was a -- there were two individuals that

19  Mr. Bennett, when he filed the motion, that it was Joe Yarnall

20  and Nancy Durey that he wanted to depose.  He would withdrew

21  those two people, and it's in the e-mails.

22         We had an agreement he could depose Heather Meinecke.

23  I flew Heather Meinecke and Amy Fleitas from Iowa to Virginia

24  Beach.  He deposed them both, and he deposed Heather Meinecke as

25  a corporate rep.  He wanted to depose her individually, take her

1   deposition individually.  That's fine.  And that's all the

2   people we're talking about, Mr. Nolan and those people, those

3   three people: Amy Fleitas, Lynn Manning, and Heather Meinecke.

4   He's deposed two of them already, and he noticed the deposition

5   of Lynn Manning and withdrew it.  That's what we're talking

6   about.

7           THE COURT:  All right.

8           MR. LYNCH:  That's it.

9           THE COURT:  Let's move on to Mr. Marquis then.  Why

10  should his second expert report be allowed?

11          MR. LYNCH:  Judge, our understanding on the disclosures

12  was the initial deadline was the party with the burden of proof.

13  The second deadline was any experts that would be disclosed by

14  anybody that didn't have the burden of proof, and then the third

15  deadline was any rebuttal opinions.  We did do a rebuttal

16  opinion for Mr. Marquis to their expert on June 3rd.  He had the

17  report.  They deposed him on June 8th.  It was a premarked

18  exhibit that Mr. Marquis had in front of him during the

19  deposition, and they chose not to question him about the

20  rebuttal report because they wanted to move to exclude it.  They

21  had it five or six days before.

22          And we take the position, Judge, that that rebuttal

23  deadline is any rebuttal report that you want to issue to any

24  expert that's been named against you.  That's our understanding.

25          THE COURT:  I had printed out the discovery plan that

1  was approved.

2          MR. LYNCH:  There was an extension order, Judge.  They

3  asked for --

4          THE COURT:  I know that.

5          MR. LYNCH:  I guess what I'm asking is what --

6          THE COURT:  If they're in the record, I haven't looked

7  at them.  I want you-all to understand that I haven't looked at

8  either of his reports.

9          MR. LYNCH:  Our report --

10          THE COURT:  What was he rebutting in -- you're right

11  about the discovery plan.  It says the party with the burden of

12  proof, respond to disclosures, and to the extent necessary,

13  rebuttal disclosures.

14          MR. LYNCH:  We have one expert, Judge.  His name's

15  Oscar Marquis.  In his opening report, he's just expressing his

16  opinions.  Their expert is an Evan Hendricks.  The rebuttal

17  report by my expert, Oscar Marquis, is limited -- that we've

18  attached it -- is limited to rebut Mr. Hendricks' opinions.

19  That's it.  They had it before his deposition.

20          THE COURT:  On different issues or on the same issues?

21          MR. LYNCH:  The same exact issues that Evan Hendricks

22  has in his report.

23          THE COURT:  Okay.

24          MR. LYNCH:  That's the --

25          THE COURT:  Is it the same issue on which Mr. Marquis

```
 1   opined?
 2          MR. LYNCH:  It actually is not exact -- because
 3   Mr. Marquis was -- I mean, some of the issues do overlap, but
 4   one issue is damages that Evan Hendricks has his report and then
 5   we rebut that.
 6          THE COURT:  Well, Mr. Bennett -- as I said, I haven't
 7   read the reports, but Mr. Bennett says in his brief that your
 8   expert completely switched his theory and is trying to back and
 9   fill.
10          MR. LYNCH:  Not at all, Judge.  You can tell from the
11   rebuttal report of Mr. Marquis that he is just responding to
12   Evan Hendricks' assertions.  It's a purely rebuttal report.
13          THE COURT:  All right.
14          MR. LYNCH:  And my understanding of the deadlines is
15   that, that any expert that you intend to rebut, that's your
16   rebuttal deadline.  And it's not just the plaintiff's rebuttal
17   of the defense expert because we could have an expert on the
18   second deadline that isn't responding to the plaintiff.  It's
19   any rebuttal experts are due by that date or any expert -- I
20   mean, any rebuttal reports.
21          THE COURT:  Where is Mr. Marquis?
22          MR. LYNCH:  He is in Chicago.  He was deposed for over
23   five hours.  All of the exhibits were sent to him, and the
24   rebuttal report was one of the premarked exhibits they sent to
25   him.  He had it right in front of him for the whole deposition.
```

1   They didn't want to depose him on it.

2          MR. BENNETT:  We can cure that, Your Honor.

3          THE COURT:  Well, we may get to that.  Are there any

4   other points you need to make Mr. Lynch?

5          MR. LYNCH:  No, Judge.

6          THE COURT:  All right.  Thank you.

7          All right.  Mr. Bennett.

8          MR. BENNETT:  A few things.  My esteemed opponent

9   certainly is an honest man, and I'm sure that it's my

10  recollection that I don't have the proposed stipulations or

11  otherwise regarding Mr. Nolan, but we do have his e-mail.  The

12  suggestion that the defendant helped arrange the depositions

13  isn't true.

14         THE COURT:  I --

15         MR. BENNETT:  He opposed producing any documents about

16  Mr. Nolan.

17         THE COURT:  All right.  If all they want to establish

18  from Mr. Nolan is that neither your client nor anyone on her

19  behalf made a request to him or through him for correction of

20  GMAC's records, does that solve your problem with Mr. Nolan?

21         MR. BENNETT:  If I could, Your Honor, for one moment?

22         THE COURT:  Sure, because Mr. Lynch knows I'm going to

23  hold him to it.

24     (Counsel conferring.)

25         MR. BENNETT:  That's right, Judge.  There are -- there

1  are state -- we've seen the state court interrogatory answers

2  that outline the credit reporting issue at length.  That's not

3  correct.  That is --

4        THE COURT:  I'm not sure what that means.  Mr. Lynch

5  says he wants to call Mr. Nolan to establish one fact and for

6  ancillary foundation facts like who he is.  The one thing he

7  wants to establish with Mr. Nolan that matters is Mr. Nolan to

8  say that neither your client nor anyone on her behalf made a

9  request through him.  Where does that leave you?

10        MR. BENNETT:  You could cure our -- you could cure our

11  prejudice to be fair.

12        THE COURT:  Okay.

13        MR. BENNETT:  I think that we would need to depose the

14  witness, but then we would then ask questions such as what about

15  this document, this document, and this document in the state

16  court action.  I don't like it.  I want trial to proceed.  I

17  don't want to have to focus on that when I'm getting ready for

18  everything else, but the honest answer to Your Honor is that it

19  wouldn't be fatal to us.

20        THE COURT:  Okay.  Well, I'm going to limit Mr. Nolan's

21  testimony to that subject, and I'm going to let you take his

22  deposition.  That's the ruling on Mr. Nolan.

23        Now, help me out with Mr. Marquis.

24        MR. BENNETT:  Judge, Mr. Marquis you could cure easy

25  enough.  The defendant, GMAC, not Mr. Marquis, has filed a

1   motion objecting.  When we got the rebuttal report, it had a

2   number of facts in it.  It's not all responsive to

3   Mr. Hendricks, but it had a number of facts in it for documents

4   the defendant had received so we served a subpoena.

5           THE COURT:  And they had the chutzpah to object to it

6   as untimely --

7           MR. BENNETT:  Yes.

8           THE COURT:  -- in the federal court in Illinois.  I saw

9   that.

10          MR. BENNETT:  We're not afraid of Mr. Marquis.  We do

11  want the documents that form the foundation of his rebuttal

12  report.  And if the defendant withdraws that, subject to the --

13  we already met and conferred on the substance of the subpoena to

14  make sure it complies with the December 2010 amendments to the

15  scope for expert discovery, but if the defendant withdraws its

16  motion and provides those documents, Mr. Marquis provides them,

17  then we don't have any prejudice.  I asked him questions

18  already.  Surprised if the defendant calls Mr. Marquis at trial.

19          THE COURT:  All right.  Let's turn this briefly into a

20  conversation.

21          Mr. Lynch, why shouldn't Mr. Bennett have the documents

22  that he needs?

23          MR. LYNCH:  Judge, first of all, I think serving the

24  subpoena on him while he's at the deposition when he had been

25  identified for two or three months --

```
1              THE COURT:  Well --

2              MR. LYNCH:  I agree.  Let's get to the substance.

3              THE COURT:  Both of you-all have done so many things

4    that I'd like to just hit you upside the head for doing that I

5    just don't want to spend any more time on that.

6              MR. LYNCH:  I'm sorry, Judge.  I'm sorry.

7              On the substance, Judge, as long as it complies with

8    the rule in the original subpoena --

9              THE COURT:  I don't care whether it complies with the

10   rule or not.

11             MR. LYNCH:  No, no, no.  Judge, I mean, the new rule

12   about the scope of discovery for experts.  If it was a fact that

13   was given to him in writing or a fact that we told him about

14   that formed the basis of the opinion, you're not entitled to

15   draft reports anymore and it's that rule.

16             THE COURT:  Okay.

17             MR. LYNCH:  As long as he complies with that rule, we

18   don't have any objection on it.

19             THE COURT:  All right.  Then give him everything that

20   complies with that rule.

21             MR. LYNCH:  Okay, Judge.

22             THE COURT:  Just get it and give it to him.

23             MR. LYNCH:  Will do.

24             THE COURT:  Thank you.  All right.

25             Mr. Bennett, back to you.
```

1          MR. BENNETT:  Judge.

2          THE COURT:  All right.  We've gotten Nolan out of the

3    way.  We got Marquis out of the way.

4          MR. BENNETT:  Yes, Your Honor.  Ms. Manning, defendant

5    represents that we withdrew her as if we don't want her.  And --

6          THE COURT:  Well, that's his characterization, and I

7    took it as such.

8          MR. BENNETT:  Yes, Your Honor.  Well, Judge, his

9    characterization by e-mail that is attached as Exhibit 12,

10   docket 107, which says -- explaining the meet and confer process

11   in the middle of May where he says after this, all right, so

12   we're going to produce -- we agree to the deposition of

13   Ms. Fleitas and you agreed to withdraw the deposition of Lynn

14   Manning.

15         They opposed --

16         THE COURT:  Mr. Bennett, would you like to take

17   Ms. Manning's deposition?

18         MR. BENNETT:  I would like to take Ms. Manning's

19   deposition in Newport News, Virginia, Judge.

20         THE COURT:  Where is she?

21         MR. BENNETT:  I have no idea.

22         MR. LYNCH:  She's in Waterloo, Iowa.

23         MR. BENNETT:  I've never given her address.

24         THE COURT:  She's what?

25         MR. LYNCH:  Waterloo, Iowa.

```
1              THE COURT:  Okay.  You can take --

2              MR. LYNCH:  She's an employee.

3              THE COURT:  Okay.  You can take it by telephone.

4              MR. BENNETT:  Yes, sir.

5              THE COURT:  All right.  That takes care of Ms. Manning.

6       Who's left?

7              MR. LYNCH:  Ms. Fleitas and Ms. Meinecke.  That's it.

8              MR. BENNETT:  I should have withdrawn in my reply

9    Ms. Fleitas.

10             THE COURT:  Ms. Fleitas, I understand, is not seriously

11   an issue.

12             What about Ms. Meinecke?

13             MR. BENNETT:  She -- Judge, that's a -- she was offered

14   on the 17th as a 30(b)(6) deponent on -- I asked for the

15   person -- one of the topics was who drafted the procedures.

16             MR. LYNCH:  I'll withdraw her as a witness.

17             MR. BENNETT:  She's the one that types the procedures.

18             THE COURT:  He just withdrew her as a witness.

19             MR. BENNETT:  There we go.

20             THE COURT:  He just withdrew her as a witness.  That

21   takes care of Ms. Meinecke.

22             MR. BENNETT:  Yes, sir.

23             THE COURT:  All right.

24             MR. BENNETT:  I'll save Your Honor.  With the

25   documents, we'll withdraw our 37(c)(1) objection to the
```

1   documents.

2          THE COURT:   Okay.   Are there any other problems out

3   there that need to be resolved before this case goes to trial?

4          I got you-all here.   Let's talk.

5          MR. BENNETT:   Judge, there are -- there are, although I

6   don't -- I would, if the Court gave me an hour, could come back

7   with the respective docket documents, but the exhibit and

8   witness list objections exist.

9          THE COURT:   Well, Judge Hilton's going to rule on them.

10         MR. BENNETT:   Yes, Your Honor, we assumed.   And then

11  Judge Hilton is hearing -- apparently Judge Hilton is hearing

12  next week a motion in limine.   The defendant is seeking to -- my

13  client after the state court action began a relationship with a

14  man who was married.   His wife cheated on him; he cheated on

15  her.

16         The defendant is arguing that any damage my client

17  would have suffered would have been her guilt or shame at

18  hooking up with a married man.   And there's no evidence that

19  that's -- that she didn't so testify, there's no third parties,

20  but we've moved to exclude that because it's an attempt to paint

21  my client or her -- the married man she's engaged to now -- her

22  fiancé's character.

23         THE COURT:   Okay.

24         MR. BENNETT:   Those -- I don't think -- I think other

25  than that, we're ready to try.

1          THE COURT:  All right.

2          MR. LYNCH:  Judge, we briefed this issue on the

3    extramarital affair.  I took the deposition.  It's relevant, but

4    unless the Court wants me to go further --

5          THE COURT:  No.  I've got my own opinion, but it's

6    Judge Hilton's opinion that matters.  If you seriously want to

7    pursue it --

8          MR. LYNCH:  We do.  I think the deposition -- we do.

9    Another important witness that wasn't identified by them at all,

10   ever.

11         THE COURT:  Well --

12         MR. LYNCH:  The other --

13         THE COURT:  -- if that's the only topic on which the

14   witness has knowledge, I might understand it.  I'm going to

15   leave that alone.

16         MR. LYNCH:  Okay.

17         THE COURT:  It's Judge Hilton's motion.  It's Judge

18   Hilton's trial.

19         MR. LYNCH:  And there's some other motions in limine

20   that we're going to file before Judge Hilton, but I think other

21   than that ...

22         THE COURT:  Well, when are you going to file yours?

23         MR. LYNCH:  We're going to file a few of those today.

24         THE COURT:  As much as you enjoy driving up and down

25   Route 95, you know, I don't see a whole lot of reason for

1    Mr. Bennett to have to drive up and down 64 and 95 multiple

2    times.

3         MR. LYNCH:  Judge, for the record, my drive isn't

4    probably a 45 -- we've joked about it.  I live in Virginia Beach

5    and Norfolk so it's actually a little longer than Mr. Bennett's

6    from Newport News.

7         THE COURT:  Well, I was misremembering.  I thought you

8    were in the Richmond office.  I apologize for that.  Let's get

9    all of the motions in limine noticed for one day.

10        MR. LYNCH:  Okay.  We've agreed on July 22nd.  There

11   will probably be some summary judgment motions.  I thought we

12   would put all the motions in limine on that same day with Judge

13   Hilton too so we both don't have to come back here next Friday.

14        THE COURT:  That will make a whole lot of sense.  I'm

15   not -- that's your call, Mr. Bennett, but I'm just -- I'm

16   reacting to the fact that he says he's going to be filing some

17   and I'm trying to save you a trip.

18        MR. BENNETT:  I have a pregnant wife and a

19   three-and-a-half year-old so these trips are painful.

20        MR. LYNCH:  We're in agreement on that.

21        MR. BENNETT:  So I appreciate that.

22        THE COURT:  If you-all can't agree on anything else,

23   maybe you can agree on a date to get it all in front of Judge

24   Hilton.

25        MR. LYNCH:  I know Mr. Bennett's on vacation, and we

1    had talked earlier about July 22nd being agreeable to everyone.

2    I think it makes a lot of sense, whatever remaining motions are

3    left in the case, if Judge Hilton is available on the 22nd.

4         THE COURT:  As far as I know he is, but you-all can

5    just go up and check with his judicial assistant before you

6    leave.  I'll just leave it at that.

7         MR. BENNETT:  It's alarming that GMAC still believes

8    it's going to file a summary judgment motion now, which would

9    put it the 15th or 16th is when their response would be due -- I

10   mean, our response would be due, which counsel's aware that his

11   pregnant wife and three-and-a-half-year-old are going to be at

12   the -- our one-week-a-year vacation.  I would expect --

13        THE COURT:  When are you going to file the motion,

14   summary judgment motion, Mr. Lynch?

15        MR. LYNCH:  We were hoping to do it --

16        THE COURT:  If you would have noticed it for the 22nd,

17   you got to file it today to comply with the local rule.

18        MR. LYNCH:  We had actually calculated we had till

19   Tuesday or Wednesday, but --

20        THE COURT:  Well, is there a waiver of the

21   three-extra-day requirement in this case?

22        MR. LYNCH:  There is not, Judge, and I may be totally

23   miscalculating.  Maybe the next Friday, which is --

24        THE COURT:  The 29th.

25        MR. LYNCH:  -- the 29th?

1            MR. BENNETT:  We would strongly prefer that.

2            MR. LYNCH:  That's fine.  That's --

3            THE COURT:  Good.  29th it is.

4            MR. LYNCH:  Okay.  Thank you, Judge.

5            THE COURT:  All right.

6            MR. BENNETT:  Your Honor, does that -- do we need to do

7    anything about the hearing next week ourselves?

8            THE COURT:  Well, it needs to be done, but if you-all

9    are in agreement, I will do it.

10            MR. BENNETT:  I'm definitely in agreement.

11            MR. LYNCH:  I'm definitely in agreement too.

12            THE COURT:  Fine.  All right.

13            Then Ms. Marquez, would you take care of that?  Thank

14    you.

15            MR. BENNETT:  Thank you.

16            MR. LYNCH:  Thank you, Judge.

17            THE COURT:  You're welcome.  All right, folks.  Get it

18    done.  Court's in recess.

19            * * *

20            (Proceedings concluded at 10:45 a.m.)

21

22

23

24

25

1

2                           CERTIFICATION

3

4          I hereby, this 7th day of July 2011, that the

5    foregoing is a correct transcript from the recording provided by

6    the court.   Any errors or omissions are due to the inability of

7    the undersigned to hear or understand said recording.

8

9                              /s/
                    _____
10                   Tracy Westfall, RPR, CMRS, CCR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25