**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **ALISHA W. WILKES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:10-cv-01160 (CMH-TRJ)** |
| | ) | |
| **GMAC MORTGAGE, LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT GMAC MORTGAGE LLC'S MEMORANDUM IN SUPPORT OF
MOTION *IN LIMINE* TO PROHIBIT ANY ARGUMENT OR EVIDENCE
ON HER CLAIM FOR DEFAMATION THAT OCCURRED
PRIOR TO MARCH 1, 2010 AND AFTER AUGUST 12, 2010**

Defendant GMAC Mortgage LLC ("GMACM" or "Defendant"), by counsel, moves this Court for entry of an Order prohibiting Plaintiff at trial from making any mention of or reference to, or argument or claim concerning, by any party herein, in opening statements, in the questioning of witnesses and expert witnesses, in documentary evidence and exhibits, in closing arguments or in any other manner before the jury, or introducing any evidence on her claim for defamation, regarding events occurring before March 1, 2010 and after August 12, 2010, and for a instruction so informing the jury of this limitations on Plaintiff's claim for damages for alleged defamation.[1]

In Count Seven of her Complaint, Plaintiff alleges a claim for defamation under the common law of Virginia.  Plaintiff testified at her deposition that she is seeking damages for: (i) credit denials; (ii) emotional distress; (iii) her "lost time … while [she] was dealing with this;"

---

[1] Defendant will be filing a motion for summary judgment on Plaintiff's claim for defamation. This Motion *in Limine* is filed in the alternative to the relief sought in the Motion for Summary Judgment.

(iv) for "unquantifiable time [she] spent elsewhere;" and (v) punitive damages.  (**Exhibit A**,

Transcript of Deposition of Alisha W. Wilkes, ("Wilkes Trans."), pp. 233:8-237:5.)

**A.      Plaintiff should be prohibited from introducing any evidence, or making any argument, concerning her claim for damages for alleged defamation that occurred prior to March 1, 2010 and after August 12, 2010.**

Plaintiff seeks damages for "*any and all defamatory statements made by GMAC*

*(all credit reports furnished to third parties containing the inaccurate tradeline) within the one-*

*year preceding this filing are actionable*."  (**Exhibit B**, Plaintiff's Answers to Defendant's

Interrogatories, p. 7; emphasis added.)  However, any claim for damages prior to March 1, 2010

resulting from alleged defamation should be prohibited.

Plaintiff testified at her deposition that the time period involved in the present

case is from March 2010 to August or September of 2010:

> Q:      So after you received this particular report in September 2010, you knew that GMAC was no longer reporting the second account?
>
> A:      I don't remember specifically looking at it, but if I would have pulled this and looked at it, then, yes, I would have had that understanding that GMAC was not reporting in September of 2009.
>
> Q:      '10.
>
> A:      '10. I'm sorry.
>
> Q:      Okay.
>
> A:      September of 2010. Yes.
>
> Q:      *So you would agree with me that the time period we're dealing with, in this case, is after you had the state court trial, GMAC continued to report the fraudulently-opened account from March to either August or September of 2010?*
>
> A:      *Yes.*
>
> Q:      And it's fair to say that – what's – well, let me ask you, what's the date of the credit report in September 2010?
>
> A:      September 13 –
>
> Q:      Okay.
>
> A:      -- 2010.
>
> Q:      It's fair to say that you don't know the specific date prior to September 13, 2010, when GMAC deleted that account from your credit report?
>
> A:      I don't.
>
> Q:      *So in generalities, we're talking about a six-month period following the trial where you're contending GMAC continued to report the fraudulently-opened account on your credit report?*

> A:    *March, April, May, June, July, August, September.   So about seven months.*
>
> Q:    *But it could be six, based on the fact that you don't know exactly when it was deleted?*
>
> A:    *Yes. I don't know if there is a credit report close to September or not that I could look at, but by September, it was gone, according to this.*

(**Exhibit A**, Wilkes Trans., 171:18-173:18; emphasis added).   Moreover, Plaintiff testified at her deposition that she is only seeking emotional distress damages from, at most, the time frame of March 2010 through September 2010:

> Q:    I'm going to make sure I kind of understand the categories of damages that you're claiming in this case.   My understanding is that from the March through September [2010] time frame, you're claiming emotional distress; is that true?
>
> A.    Yes.

(**Exhibit A**, Wilkes Trans., 233:8-14).

Plaintiff also acknowledges that her claim for "economic damage" cannot predate March 2010.   She states in her Answers to Interrogatories that she is seeking "economic damage" for "the total time spent in her attempts to resolve her dispute to be approximately 40 hours (*from 3/10* - to present)."   (**Exhibit B**, Plaintiff's Answers to Defendant's Interrogatories, pp. 19-20; emphasis added.)   Therefore, she should be prohibited from making any claim for damages resulting from alleged defamatory statements prior March 1, 2010.[2]

---

[2]      Alternatively, Plaintiff's claim for defamation should be prohibited to extent it seeks to impose liability upon Defendant for statements prior to February 5, 2010.  As Plaintiff expressly alleges in her Complaint, Defendant and Plaintiff engaged in lengthy litigation for more than a year in a state court lawsuit in which Plaintiff sought a declaratory judgment that the subject mortgage account (i.e. the promissory note and deed of trust) is void.  (Complaint, ¶¶ 20-23.)  On February 4, 2010, the state court "issued a letter opinion voiding the Promissory Note and Deed of Trust as to Ms. Wilkes."  (*Id.*, ¶ 23.)  Plaintiff claims that, as of the issuance of the state court's decision, Defendant "had actual knowledge that a court of competent jurisdiction declared and ordered that Ms. Wilkes was not obligated on the account."  (**Exhibit B**, Plaintiff's Answers to Defendant's Interrogatories, p. 3.)

        To be defamatory, a statement must be one of fact, not opinion, *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985), and the plaintiff must be able to prove the falsity of the statement "and that the defendant either knew it to be false, or believing it to be true, lacked reasonable

Plaintiff also seeks damages for "credit denials."  (**Exhibit B**, Plaintiff's Answers to Defendant's Interrogatories, pp. 19.)  However, the alleged defamatory statements for these "credit denials" occurred on May 3, 201 and May 4, 2010.  (**Exhibit B**, Plaintiff's Answers to Defendant's Interrogatories, p. 3.)  The letters indicated a "credit denial" occurred on May 4, 2010 and May 24, 2010.  Further, Plaintiff testified at her deposition, based upon the documents she produced in discovery, that her credit applications were denied in May, 2010.  (**Exhibit A**, Wilkes Trans., 208:21-209:3; 219:7-18).  There is no indication Plaintiff applied for any credit after May 2010.

The last time that GMAC sent its regular monthly credit reporting to the credit bureaus on the subject mortgage account in dispute was on May 14, 2010.  (*See* **Exhibit C**, Defendant's Answers to Plaintiff's Interrogatories, p. 11.)  Upon GMAC's receipt of a letter from Plaintiff sent directly to it, GMAC requested that the credit bureaus delete the subject

---

grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based," *Gazette Inc., v. Harris*, 229 Va. 1, 15 (1985). It is for the Court to determine as a matter of law whether the statement is fact or opinion. *See Williams v. Garraghty*, 249 Va. 224, 455 S.E.2d 209 (1995); *W.J.L.A. v. Levin*, 264 Va. 140, 564 S.E.2d 383 (2002).

Clearly, Plaintiff's claim for defamation should be limited to the extent she seeks relief for any statements prior to February 5, 2010 because Defendant's statements were not made when it knew them to be false, Defendant did not lack a reasonable grounds to believe the statements were true, and Defendant did not act negligently in failing to ascertain the facts on which the credit reporting was based when the credit reporting occurred prior to February 5, 2010.[2] Indeed, as Plaintiff states, "GMAC was a party to this action and actively participated in the two day trial," (**Exhibit B**, Plaintiff's Answers to Defendant's Interrogatories, p. 3), which occurred on January 25 and 26, 2010, after which "the Court took the matter under advisement" and subsequently issued its "written opinion letter" on February 4, 2010, (Complaint, ¶¶ 22-23). Having filed her complaint in state court on or about November 25, 2008, and litigating with GMACM and other defendants for over 14 months and a "two days of hearing evidence" at trial by the state court," it cannot be said that, prior to the state court's letter opinion on February 4, 2010, GMACM either knew the credit reporting to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the credit reporting was based.  (Complaint, ¶¶ 22-23.)

tradeline on August 12, 2010.   (*See* **Exhibit C**, Defendant's Answers to Plaintiff's Interrogatories, p 11.)  Therefore, Plaintiff should be prohibited from claiming any damages for defamation that post-date August 12, 2010 because, as of August 12, 2010, GMAC requested that the alleged defamatory statement be deleted from Plaintiff's credit file. There is no indication that subsequent statements were made, by either GMACM to a credit bureau or republished by a credit bureau to a third party, regarding the disputed tradeline after August 12, 2010, therefore Plaintiff could not suffer any further damages.[3]

As a result, Plaintiff's claims for damages for defamation should be limited to the time period of March 1, 2010 through August 12, 2010, or in the alternative February 5, 2010 through September 13, 2010.

**B.      Alternatively, Plaintiff should be prohibited from making any claim for defamation and any damages alleged as a result for the time period prior to October 14, 2009.**

Alternatively, because of Virginia's one-year statute of limitations, Plaintiff should be prohibited from making any argument, or introducing any evidence, concerning her claim for defamation that pre-dates October 14, 2009 because of Virginia's one-year statute of limitation regarding a claim for defamation.  *See* Va. Code Ann. § 8.01-247.1; *Wjla-Tv v. Levin*, 264 Va. 140, 153 (2002) (holding "a plaintiff is not entitled to recover damages for publications that are not actionable as a matter of law").

---

[3]      Alternatively, it is undisputed that the subject tradeline was completely removed from Plaintiff's credit report, at the latest, by September 13, 2010.  (*See* **Exhibit A**, Wilkes Trans. 169:11-172:14.)  Plaintiff specifically testified that, as of September of 2010, the GMAC account that is the subject of this lawsuit "was deleted by then." (*Id.*, 170:17-171:1.)  In other words, she knew it was deleted before filing the present lawsuit on October 14, 2010.  Further, Plaintiff's own expert, Evan Hendricks, also testified that the tradeline was completely deleted from Plaintiff's credit file, at the latest, as of September 13, 2010.  (*See* **Exhibit D**, Hendricks Trans., 208:12-22.)  As a result, at the very least Plaintiff should be prohibited from claiming any for damages for defamation that postdate September 13, 2010.

Plaintiff filed her Complaint on October 14, 2010.  In her Answers to Defendant's Interrogatories, Plaintiff claims that defamatory statements were made, for example, on April 4, 2009 and that the alleged defamatory statements were republished on or after April 25, 2008. (**Exhibit B**, Plaintiff's Answers to Defendant's Interrogatories, pp. 3-6.)   According to the Fourth Circuit, Plaintiff cannot obtain any relief for any alleged defamatory statements that occurred more than one (1) year prior to the date of filing this Complaint:

> The Virginia General Assembly has declined to adopt a discovery rule in defamation actions. Va. Code § 8.01-230 provides that a "right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained . . . and not when the resulting damage is discovered." The statute then enumerates specific exceptions to the accrual rule. The defamation statute of limitations is not among the listed exceptions. *See Jordan v. Shands*, 255 Va. 492, 498, 500 S.E.2d 215 (1998) ("Any cause of action that the plaintiff may have had for defamation against any of the defendants accrued on . . . the date she alleges . . . that the defamatory acts occurred.").

*Bass v. E. I. DuPont de Nemours & Co.*, 28 Fed. Appx. 201, 206 (4th Cir. 2002) (unpublished). Therefore, Count Seven for defamation is time-barred as to those publications or republications occurring before October 14, 2009.  *See Wuchenich v. Shenandoah Mem'l Hosp.*, 2000 U.S. App. LEXIS 11557, 46-52 (4th Cir. 2000); *Moore v. Allied Chemical Corp.*, 480 F. Supp. 364, 376 (E.D. Va. 1979).  Despite alleging the existence of defamatory statements prior to October 14, 2009, Plaintiff does not contest this limitation on her claim for defamation because she expressly admits this in her Answers to Defendant's Interrogatories: "Ms. Wilkes filed this lawsuit on October 14, 2010.  Therefore, *any and all defamatory statements made by GMAC (all credit reports furnished to third parties containing the inaccurate tradeline) within the one-year preceding this filing are actionable*."   (**Exhibit B**, Plaintiff's Answers to Defendant's Interrogatories, p. 7; emphasis added.)  Therefore, in the alternative to limiting Plaintiff's claim to the time period beginning March 1, 2010, Plaintiff should be prohibited from introducing any

evidence, or making any argument, concerning any events that occurred prior to October 14, 2009 regarding her claim for defamation.

WHEREFORE, for the reasons set forth in Defendant's accompanying Memorandum in Support filed simultaneously, GMAC Mortgage, LLC, requests this Court grant its foregoing Motion *in Limine* and for such other and further relief as this Court deems appropriate and just.

Dated:  July 7, 2011                                          Respectfully Submitted,

**GMAC MORTGAGE LLC**

By: ___/s/ John C. Lynch_____
                    Of Counsel

John C. Lynch (VSB No. 39267)
Ethan G. Ostroff (VSB No. 71610)
Elizabeth S. Flowers (VSB No. 78487)
*Counsel for Defendant GMAC Mortgage LLC*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: ethan.ostroff@troutmansanders.com
E-mail: liz.flowers@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

### Counsel for Plaintiff
John C. Bazaz, Esq.
Law offices of John Bazaz, PLC
4000 Legato Rd., Suite 1100
Fairfax, VA 22033
E-mail: jbazaz@bazazlaw.com

Leonard Anthony Bennett
Consumer Litigation Assoc PC
12515 Warwick Blvd., Suite 1000
Newport News, Virginia 23606
E-mail: lenbennett@cox.net

Matthew James Erausquin
Consumer Litigation Assoc PC
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
E-mail: matt@clalegal.com

### Counsel for America Funding, Inc.
Brian Nelson Casey, Esq.
Taylor & Walker PC
555 Main St , PO Box 3490
Norfolk, VA 23514-3490
Email: bcasey@taylorwalkerlaw.com

                /s/ John C. Lynch
John C. Lynch (VSB No. 39267)
*Counsel for Defendant GMAC Mortgage LLC*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

419753v1