```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

ALISHA W. WILKES,                )
                                 )
            Plaintiff,           )  NO. 1:10-cv-00160
                                 )  (CMH-TRJ)
-vs-                             )
                                 )
GMAC MORTGAGE, LLC, et al.,      )  VIDEOTAPED
                                 )  DEPOSITION OF
            Defendants.          )  ALLISON HIGGINS
```

The videotaped deposition of MS. ALLISON HIGGINS called as a witness by the plaintiff in the above-entitled action, pursuant to notice and taken before Brenda L. Bodensteiner Klenk, Certified Shorthand Reporter, Registered Professional Reporter, and Notary Public, at GMAC Mortgage, LLC, 3451 Hammond Avenue, Waterloo, Iowa, on April 25, 2011, at 2:50 p.m.

APPEARANCES:

    CONSUMER LITIGATION ASSOCIATES, PC
    By ATTORNEY LEONARD A. BENNETT
    12515 Warwick Boulevard, Suite 1000
    Newport News, Virginia 23606
    Lenbennett@cox.net

 and

    LAW OFFICES OF JOHN BAZAZ, PLC
    By ATTORNEY JOHN BAZAZ
    4000 Legato Road, Suite 1100
    Fairfax, Virginia 22033
    Jbazaz@bazazlaw.com

     appeared telephonically on behalf of the
     plaintiff;

Exhibit J

```
 1    APPEARANCES (Continued):
 2
                     TROUTMAN SANDERS LLP
 3                   By ATTORNEY JOHN C. LYNCH
                     222 Central Park Avenue, Suite 2000
 4                   Virginia Beach, Virginia  23462
                     757.687.7765
 5                   John.lynch@troutmansanders.com
 6                        appeared on behalf of GMAC Mortgage, LLC,
                          defendant;
 7
 8                   TAYLOR & WALKER, PC
                     By ATTORNEY BRIAN NELSON CASEY
 9                   555 Main Street
                     P.O. Box 3490
10                   Norfolk, Virginia  23514-3490
                     757.625.7300
11                   Bcasey@taylorwalkerlaw.com
12                        appeared telephonically on behalf of
                          America Funding, Inc., defendant;
13
14                   GLASSER & GLASSER, PLC
                     By ATTORNEY JASON HAMLIN
15                   580 East Main Street, Suite 600
                     Norfolk, Virginia  23510-3490
16                   Jhamlin@glasserlaw.com.com
17                        appeared telephonically on behalf of
                          Nationstar Mortgage, LLC, defendant;
18
19                   MORRIS & MORRIS, PC
                     By ATTORNEY GRANT EDWARD KRONENBERG
20                   700 East Main Street, Suite 1100
                     P.O. Box 30
21                   Richmond, Virginia  23218-3490
                     Gkronenberg@morrismorris.com.com
22
                          appeared telephonically on behalf of
23                        Trans Union, LLC, defendant.
24    VIDEOGRAPHER:
25                   David Seuferer, Video Specialists LLC
```

Page 2

```
 1    and you.  But when he says anything other --
 2              MR. BENNETT:  I'm asking you personally.
 3              MR. LYNCH:  Right.  Other than communications with
 4    counsel.
 5        A.    No, I have not.
 6    BY MR. BENNETT:
 7        Q.    Well, I will tell you -- and I don't think
 8    Mr. Lynch will deny it -- that my client had -- when these
 9    2010 disputes came in, my client had already gone to state
10    court and won a decision that she did not sign the loan
11    papers.  They were forged by her ex-husband.
12              Are you aware of that accusation or that
13    allegation?
14        A.    No, I am not.
15        Q.    In this instance you received one ACDV in March
16    2010.  Have you had an opportunity to review that ACDV?
17        A.    Yes, I have.
18        Q.    Do you have any independent recollection of the
19    investigation that was done way back in March of '010?
20        A.    No.
21        Q.    Now, if you were following the procedures that
22    your employer required, can you tell us how you would have
23    handled that dispute?
24              And in fact, why don't we go ahead and open up
25    Exhibit 2.  And if you'll turn -- it's actually Page 7 of
```

Page 9

```
 1    the document.  The bottom right says GMAC/AW283 (sic).
 2           MR. LYNCH:  Which exhibit again?  She's having
 3    trouble finding it.
 4           MR. BENNETT:  Exhibit 2.
 5           MR. LYNCH:  Okay.
 6           THE WITNESS:  I have --
 7           MR. LYNCH:  You sure it's -83 or -63?
 8           THE WITNESS:  I have -63.
 9           MR. BENNETT:  It's -63.  I'm sorry.
10           THE WITNESS:  Okay.  I have it then.
11    BY MR. BENNETT:
12       Q.  All right.  This is the ACDV that you performed on
13    this account; right?
14       A.  Yes; that's correct.
15       Q.  First, what do you understand the role or the
16    job -- big picture question -- of the ACDV process at GMAC?
17       A.  The ACDV is a dispute that the borrowers file
18    directly with the credit bureaus.  And it comes through our
19    electronic system e-OSCAR.  And from there then we would
20    research the account and respond accordingly.
21       Q.  And can you tell us now looking at this ACDV and
22    your -- based on your familiarity and knowledge of the GMAC
23    required procedures, tell us what you would have done to
24    investigate this dispute when it came in?
25       A.  Okay.  This -- when the ACDV came in, I would
```

Page 10

```
 1    have -- I would look at the consumer information which is
 2    their name, Social Security number, and address.  I would
 3    confirm that information through our loan serve system which
 4    is called Fiserv.
 5         We also would check that through the original
 6    documents that which are available in another system called
 7    ISS.  Then I would move to the account information and
 8    report the account status, payment history, all the -- the
 9    current status of the account based on factual information.
10       Q.   In this instance what -- looking at that ACDV, what
11    would you have understood Ms. Wilkes to be disputing about
12    this account?
13       A.   The dispute code is Claims True Identity Fraud.
14       Q.   All right.  And so what would you have understood
15    her dispute -- I mean, well, what would you have done on
16    that dispute?
17       A.   I would have verified her information through our
18    Fiserv system as well as the original documents in ISS.
19       Q.   Is there any step in handling such an investigation
20    that -- by which GMAC would have permitted you to look
21    outside of its own computer systems to determine the
22    accuracy of the account?
23       A.   We don't -- I would only have the information
24    available to me.
25       Q.   But it's -- the only information GMAC made
```

Page 11

```
 1    available to you is what is in its own computer system;
 2    correct?
 3         A.   That's correct.
 4         Q.   And even then it would have only been the part of
 5    the GMAC computer system that details those items you've
 6    just described, the consumer information and those other
 7    items about payment history, portfolio type, and all that
 8    stuff; right?
 9              MR. LYNCH:  I'll object to form.
10              But you can answer.
11         A.   That's -- that's correct.
12    BY MR. BENNETT:
13         Q.   In this instance Ms. Wilkes had already gone to
14    court and prevailed in state court against GMAC.  Is that
15    the type of information that would have been made available
16    to you by GMAC in its ordinary procedures to conduct such an
17    investigation?
18              MR. LYNCH:  Objection, form.
19              You can answer.
20         A.   There -- I would have looked at the notes on
21    the account.  And if there -- if the credit reporting was
22    still on and wasn't suppressed due to any litigation on the
23    account, that's -- that's all the information I would have.
24    BY MR. BENNETT:
25         Q.   Now, under what circumstances would you have been
```

Page 12